UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No. 8:22-cr-145-TPB-AAS

RICHARD ALLEN RANDOLPH,

    Defendant.
_____/

**ORDER DENYING "DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE GOVERNMENT'S FIREARM IDENTIFICATION EVIDENCE"**

This matter is before the Court on "Defendant's Motion in Limine to Exclude the Government's Firearm Identification Evidence," filed on February 28, 2023. (Doc. 41). The Government filed a response in opposition on April 14, 2023. (Doc. 46). Because no hearing is required, Defendant's request for hearing is denied. (Doc. 42). Upon review of the motion, response, court file, and record, the Court finds as follows:

**Background**

In January and February of 2020, four local businesses were robbed: J-Lo Beauty Supply, Citgo Food Market, Annie Nails, and Family Dollar. Based on the circumstances, law enforcement suspected that one individual committed these four robberies. At each robbery, the individual entered the stores wearing a dark hoodie to disguise his face and gloves to cover his hands, and he used a firearm to threaten the store employees. The individual actually discharged the firearm at least twice in the parking lot during the robbery at Family Dollar. Although the suspect fled,

law enforcement recovered a .380 caliber spent casing. The evidence was impounded and preserved. However, for a long time, law enforcement had no leads.

That changed in in July 2021, during a routine traffic stop, when police seized a Pico Beretta .380 pistol from David Haggins. Haggins claimed that he received the firearm from Richard Allen Randolph. Police test-fired the Beretta and submitted images to the National Integrated Ballistic Information Network ("NIBIN") database, which compares images of ballistic evidence from shooting scenes to recovered firearms for possible matches. The submission generated a lead of a possible association with images submitted after the Family Dollar robbery.

As such, the case agent submitted the recovered Beretta, projectile, and cartridge to the Bureau of Alcohol, Tobacco, Firearm, and Explosives Forensic Science Laboratory in Atlanta, Georgia, for examination. Andrew Pike, a firearm and tool mark examiner at the laboratory, examined the submission and concluded that the projectile and casing were fired from the Beretta. Specifically, he reported that "the probability that the toolmarks on [the projectile and casing] were made by a different source, other than [the Beretta], is so small that it is negligible." A second examiner then verified Mr. Pike's results.

Defendant was ultimately indicted by a federal grand jury on eight counts : four related to Hobbs Act robberies and four corresponding firearm charges.

## Legal Standard

An expert witness may testify in the form of an opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). "The party offering the expert testimony bears the burden of establishing, by a preponderance of the evidence, the expert's qualification, reliability, and helpfulness." *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942 (11th Cir. 2015) (citing *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc)).

Functioning as a gatekeeper, the district court plays an important role by ensuring that all expert testimony is reliable and relevant. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Although *Daubert* references specific factors for the district court to consider when evaluating relevancy and reliability, the inquiry is a flexible one, focusing on the principles and methodology employed by the expert, not on the conclusions reached. *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014); *see also Hanna v. Ward Mfg., Inc.*, 723 F. App'x 647, 649-50 (11th Cir. 2018) (outlining the criteria for the admissibility of expert witness testimony). Essentially, the Court is simply asked to determine if the evidence "rests on a reliable foundation and is relevant." *Daubert*, 509 U.S. at 597.

## Analysis

Firearm toolmark identification methodology stems from the theory that every firearm leaves a different mark on the bullets that pass through it due to random irregularities in firearm manufacturing. The Association of Firearm and Tool Mark Examiners ("AFTE") methodology requires examiners to subjectively compare the marks on different bullets for "sufficient agreement" to determine if they came from the same firearm. Specifically, the examiner test-fires the firearm in question to obtain a "test bullet" and then compares the features on the test bullet, which he knows came from the firearm, to the bullet recovered from a crime scene to determine if that bullet came from the same firearm. If there is sufficient agreement, the firearm is considered a match to the recovered bullet. A second examiner then independently examines the evidence to verify the first examiner's results.

Historically, courts have "generally allowed firearm examiners to testify, without many restrictions, that a bullet found at the scene of a crime was fired from a particular gun." *United States v. Romero-Lobato*, 379 F. Supp. 3d 1111, 1116 (D. Nev. 2019) (citing David H. Kaye, *Firearm-Mark Evidence: Looking Back and Looking Ahead*, 68 CASE W. RES. L. REV. 723, 725–26 (2018)). Since the turn of the century, some courts have begun to question the AFTE methodology and have instituted some limitations on the admission of certain conclusions by firearms experts. *Id.* at 1116. Yet, it appears that "courts that imposed limitations on

firearm and toolmark expert testimony [are] the exception rather than the rule." *Id.* at 1117.

Defendant seeks to exclude or limit Pike's testimony, arguing that the AFTE methodology is unreliable.[1] A methodology's reliability depends on factors including: 1) testability, (2) peer review and publication, (3) known or potential rate of error, (4) objective standards to control the technique's operation, and (5) general acceptance within the relevant scientific community. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149-50 (1999) (quoting *Daubert*, 509 U.S. at 592-94).

A balance of the factors shows that AFTE methodology is sufficiently reliable. *Romero-Lobato*, 379 F. Supp. 3d 1111, 1122. "The AFTE method can be and has been frequently tested." *Id.* at 1119 (citing *United States v. Ashburn*, 88 F. Supp. 3d 239, 245 (E.D.N.Y. 2015); *United States v. Otero*, 849 F. Supp. 2d 425, 432-33 (D.N.J. 2012)). The technique has also been subjected to peer review and publication. *Id.* at 1118. The third *Daubert* reliability factor – whether the technique has a known or potential rate of error – also weighs in favor of admissibility. "Federal courts examining the issue universally report a low error rate for the AFTE method." *Id.* at 1119. As for objective standards, even if this factor overall weighs against admissibility, "[t]he mere fact that an expert's opinion is derived from subjective methodology does not render it unreliable" and therefore inadmissible. *Id.* at 1120-21. Finally, it is clear that the AFTE method enjoys general acceptance within the relevant community. *Id.* at 1122 (collecting cases).

---

[1] Defendant's motion focuses exclusively on the reliability of firearm toolmark identification, and he does not challenge Pike's expert qualification at this time.

The testability, peer review and publication, known or potential error rate, and general acceptance within the relevant scientific community all weigh heavily in favor of admission. As such, "Defendant's Motion in Limine to Exclude the Government's Firearm Identification Evidence" is denied. Defendant may certainly challenge Pike's testimony and the firearms evidence through vigorous cross-examination and the presentation of contrary evidence, among other things. *See Daubert*, 509 U.S. at 596.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant's Motion in Limine to Exclude the Government's Firearm Identification Evidence" (Doc. 41) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 17th day of July, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**